**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRENDA C. WALKER,

       Plaintiff,

vs.                                                               Case NO. 3:06-cv-587-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

       Defendant.
_____

## ORDER AND OPINION

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim for disability insurance benefits ("DIB"). 42 U.S.C. § 405(g). Plaintiff seeks reversal of the Commissioner's decision with directions for processing of payment, or alternatively, reversal and remand of the decision for a further hearing. (Doc. #1, p. 2). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 9, 2007. (Doc. #25). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

## I. Procedural History

Plaintiff filed an application for a period of disability and DIB on September 25, 2003. (Tr. at 12). Plaintiff claims she became disabled on February 5, 2003 due to back and neck pain and chronic headaches. (Tr. at 12; Doc. #24, p. 1). Plaintiff's initial application was denied, as was her request for reconsideration. (Tr. at 12). Plaintiff timely requested a hearing before Administrative Law Judge ("ALJ") James R. Russell and a hearing was held on November 8, 2005. (Tr. at 12). After conducting the hearing, the ALJ issued an unfavorable decision on April 11, 2006. (Tr. at 9-17). Subsequently, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. (Tr. at 4-6).

## II. Statement of Facts

Plaintiff was forty years old on the date of the administrative decision and possessed a high school education. (Tr. at 275-76). Plaintiff claims she is disabled due to an injury to her neck and back that she sustained in a motor vehicle accident on February 5, 2003. (Tr. at 138). The record reflects that the accident "involved a rear-end collision in which there was no loss of consciousness and minimal damage done to her [Plaintiff's] 1989 Cadillac, and no damage to the Saturn which rear-ended her." (Tr. at 138). Plaintiff maintains that she was injured in the accident because, at the moment of collision, she was hyperextended while reaching into the back seat to check on her daughter. (Tr. at 138).

Immediately following the accident, Plaintiff sought physical therapy treatment at Heartland Rehabilitation Services ("Heartland") for pain and decreased range of motion stemming from the automobile accident. (Tr. at 116-33). The record reflects Plaintiff's physical therapy at Heartland was unsuccessful in relieving Plaintiff's pain. (Tr. at 129).

Thereafter, Plaintiff sought treatment from Dr. Perry Cole and Dr. Stephanie Garrison at the Institute of Pain Management. (Tr. at 135-50). Dr. Cole recorded symptoms of significant muscle spasms, tenderness, and a reduced range of motion in both the cervical and lumbar spine on April 2, 2003 (Tr. at 139); however, an MRI of the cervical spine performed on April 11, 2003 revealed no evidence of fracture or soft tissue injuries and was described as unremarkable. (Tr. at 136). An additional MRI of the lumbar spine revealed "very small protrusions at L5-S1 and L4-5 causing minimal effacement of the anterior thecal sac," but was otherwise unremarkable. (Tr. at 136). Neither Dr. Cole or Dr. Garrison assigned Plaintiff any specific limitations as a result of her injuries. (*See* Tr. at 135-50).

A discogram and CT scan of the lumbar spine, performed on September 30, 2003, revealed mild bulging at L4-5 and mild flattening at L5-S1, but no significant canal or foraminal stenosis. (Tr. at 157). Plaintiff underwent a percutaneous disc decompression ("IDET") procedure on her L4-5 vertebrae by Dr. Claudio Vincenty at Baptist Medical Center on December 2, 2003. (Tr. at 160-64). Following the procedure, Plaintiff stated that the IDET did not result in any relief and that her symptoms had actually increased. (Tr. at 178).

On April 14, 2004, a state agency medical consultant, Dr. Donald Morford, reviewed Plaintiff's medical records and concluded Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, as well as sit, stand or walk for up to six hours each in an eight-hour work day. (Tr. at 200). Dr. Morford also stated that Plaintiff could occasionally climb, balance, stoop, kneel, crouch or crawl. (Tr. at 201, 203). By contrast, on April 20, 2004, Dr. Vincenty gave Plaintiff a overall disability rating of eight (8) percent and stated that Plaintiff should "avoid bending, lifting, twisting or overhead work." (Tr. at 232). Dr. Vincenty, however, did not specify the degree to which those activities were

limited.  (*See* Tr. at 232).

Prior to her injury, Plaintiff worked as a pre-kindergarten teacher.  (Tr. at 276-78). Plaintiff also has ten years of previous work experience as a banking specialist.  (Tr. at 278) . Plaintiff's stated duties as a banking specialist involved periodically performing the role of a bank teller, customer service representative, and branch manager when another employee was on vacation or otherwise unavailable.  (Tr. at 278, 295-97).

After reviewing the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work.  (Tr. at 14-15, Finding 5).  The ALJ found Plaintiff not disabled at the fourth step of the sequential evaluation process by relying upon the testimony of a vocational expert and the *Dictionary of Occupational Titles* to conclude that Plaintiff could perform her past relevant work ("PRW") as a bank teller, customer service representative, or manager of a financial institution.  (Tr. at 16, Finding 6).

### III. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.[2]  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)). Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must

determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Analysis

### A. The ALJ's Description of Plaintiff's RFC

Plaintiff argues that the ALJ erred when he misstated that the Plaintiff has the RFC to perform work at the "sedentary" level when, in fact, he should have stated that Plaintiff had the RFC to perform work at the light exertional level. (Tr. at 15; Doc. #24, p. 13). The ALJ found Plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the RFC to lift and carry 10 pounds frequently or 20 pounds occasionally, stand and/or walk 6 hours during an 8-hour workday, and sit at least 6 hours during an 8-hour workday. She must be able to alternate between sitting and standing as necessary. She cannot climb ropes, ladders, or scaffolds. She must avoid concentrated exposure to unusual workplace hazards. It is therefore concluded that the claimant retains the RFC for work at the *sedentary level* of exertion.

(Tr. at 14-15, Finding No. 5) (*emphasis added*).

Here, the ALJ found Plaintiff to have the residual functional capacity to perform work at the light exertional level; however, the ALJ misstated that Plaintiff's RFC was at the sedentary exertional level. The Commissioner defines light work as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). By contrast, sedentary work never involves lifting more than ten pounds at a time. 20 C.F.R. § 404.1567(a). The ALJ's statement that Plaintiff was limited to sedentary work is inconsistent with the actual exertional limitations the ALJ found

6

Plaintiff to have–which fall within the Commissioner's definition of light work.

Consequently, the ALJ's use of the word "sedentary" versus "light" merely equates to harmless error. The harmless error rule is applicable where the "mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached." *U.S. Steel Corp. v. U.S. Envtl. Protection Agency*, 595 F.2d 207, 215 (5th Cir. 1979)[3] (*quoting Braniff Airways, Inc. v. CAB*, 379 F.2d 453, 466 (D.C. Cir. 1967)).

The ALJ's characterization of Plaintiff's past relevant work as light or sedentary had no effect on the outcome of this case because the RFC the ALJ found Plaintiff to have includes work done at the sedentary level. "If someone can do light work, we [the Social Security Administration] determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b). In the instant case, the ALJ did not find Plaintiff had a loss of fine dexterity or the inability to sit for long periods, as evidenced by Plaintiff's RFC, *supra*.

Although Dr. Vincenty suggested that Plaintiff should avoid lifting, he did not state the degree to which Plaintiff was precluded from lifting and there is no medical opinion of record which would support a finding that Plaintiff's RFC was limited only to sedentary work. Furthermore, one of the jobs identified from Plaintiff's past relevant work (manager of a financial institution) is, in fact, classified as sedentary work. (Tr. at 115, 298); *see also*

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

1 United States Dep't of Labor, *Dictionary of Occupational Titles* § 186.167-086 (4th Ed. 1991). Accordingly, the undersigned finds that the ALJ's misstatement regarding sedentary work versus light work was harmless error.

**B. Possible Conflicts Between the Vocational Expert's Testimony and the *Dictionary of Occupational Titles***

Plaintiff's second argument is that the ALJ committed reversible error by failing to ask the vocational expert about any possible conflicts between the VE's testimony and the *Dictionary of Occupational Titles* ("DOT"). Social Security Ruling ("SSR") 00-4p requires the ALJ to ask the VE whether any possible conflicts exist between his or her testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000). As discussed below, the Court is not persuaded by Plaintiff's argument.

Prior to the administrative hearing the VE reviewed Plaintiff's application for benefits and completed a form which identified the DOT entry that corresponded with each of the jobs Plaintiff performed in the past. (Tr. at 114-15). This form apprised the VE of his duty to inform the ALJ if any conflicts existed between his proposed testimony and the job descriptions in the DOT. The VE signed the form, which states: "As required by SSR 00-4p, I [the VE] must fully and specifically explain any of my testimony that conflicts with the content of the *Dictionary of Occupational Titles* or the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles.*" (Tr. at 114).

Before testifying the VE was made aware of his duty to explain any conflicts between his testimony and the DOT, and during the hearing, the VE indicated that no such conflicts existed. (*See* Tr. at 296-99). Thus, the Court finds that by apprising the VE of his duty to explain any possible conflicts and by soliciting testimony from the VE that no such conflicts

existed, the ALJ fulfilled his duty to ask the VE about any possible conflicts between his testimony and the DOT in accordance with SSR 00-4p.

The Court notes that, if there were a conflict between the VE's testimony and the DOT, the ALJ would have been required to elicit a reasonable explanation for the conflict before relying on the VE's testimony. SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). SSR 00-4p states in pertinent part:

> Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information provided by the DOT. *When there is an apparent unresolved conflict between the VE testimony and the DOT*, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) (*emphasis added*). The duty to elicit a reasonable explanation under SSR 00-4p, however, is only required "when there is an apparent conflict between the VE testimony and the DOT." *Id.*

In the instant case, the Court is convinced that there were no apparent conflicts between the testimony of the VE and the DOT description of Plaintiff's past relevant work. The VE testified that Plaintiff could work as a bank teller and stated that Plaintiff could perform that job as it is defined in the DOT. (Tr. at 299). The VE further testified that Plaintiff could work as a customer service representative and manager of a financial institution, both as she previously performed those jobs and as those jobs are defined in the DOT. (Tr. at 299).

An examination of those DOT listings clearly shows that there are no inconsistencies in the VE's testimony. *See Dictionary of Occupational Titles* §§ 211.362-018, 205.362-026,

186.167-086. For example, the DOT describes the positions of bank teller and customer service representative as light work (*Dictionary of Occupational Titles* §§ 211.362-018, 205.362-026); these descriptions are consistent with the ALJ's RFC finding with respect to Plaintiff's ability to lift, carry, sit, stand and walk. (*See* Tr. at 14-15, Finding No. 5). Moreover, the position of manager of a financial institution is described as sedentary work in the DOT. *Dictionary of Occupational Titles* § 186.167-086. It is presumed that someone who can perform light work can also perform sedentary work. 20 C.F.R. § 404.1567(b). The Court finds that the ALJ did not specifically inquire as to whether any conflicts existed between the VE's testimony and the DOT because there were no such unresolved conflicts which required inquiry under SSR 00-4p. As there was no apparent conflict pursuant to SSR 00-4p, the ALJ was not required to elicit an explanation from the VE.

Accordingly, the Court finds that Plaintiff's second argument is without merit. The ALJ properly qualified the VE's testimony under the requirements of SSR 00-4p and properly relied on the testimony of the VE.

## C. The Physical and Mental Demands of Plaintiff's Past Relevant Work

Plaintiff's third argument is that the ALJ failed to make any specific findings regarding the physical and mental demands of Plaintiff's PRW pursuant to SSR 82-62, which requires the ALJ to obtain sufficient evidence necessary to make a determination as to whether a plaintiff can perform the physical and mental demands of their PRW. SSR 82-62, 1982 WL 31386, at *3 (S.S.A. Nov. 30, 1981). SSR 82-62 provides, in pertinent part, as follows:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

> 1. A finding of fact as to the individual's RFC;
> 2. A finding of fact as to the physical and mental demands of the past job/occupation;
> 3. A finding of fact that the individual's RFC would permit a return to his or her past relevant work.

*Id.* at *4.

First, the ALJ's decision contains a finding regarding Plaintiff's residual functional capacity, *supra*. (Tr. at 14-17). Second, in comparing Plaintiff's RFC to the physical and mental demands of her past relevant work, the ALJ stated that he relied upon the testimony of the VE. (Tr. at 16-17). The ALJ is entitled to rely upon VE testimony along with the DOT to determine the physical demands of Plaintiff's past relevant work as generally performed in the economy. 20 C.F.R. § 404.1560(b)(2). Moreover, Plaintiff herself described the physical demands of her past relevant work in both her application for benefits as well as her testimony during the administrative hearing. (Tr. at 84-85, 91-93, 276-79, 295-97).

The VE testified that Plaintiff could work as a bank teller (as that job is defined in the DOT) and as a customer service representative and manager of a financial institution, both as she previously performed those jobs and as those jobs are defined in the DOT. (Tr. at 299). The Court finds that by having adequate information within the record (*i.e.* Plaintiff's application describing the demands of her PRW) and by soliciting testimony from both the Plaintiff and the VE pertaining to the demands of Plaintiff's PRW (Tr. at 295-300), the ALJ made the requisite findings of fact concerning the physical and mental demands of Plaintiff's past relevant work.

Finally, by relying on the VE's testimony and the *Dictionary of Occupational Titles*, the ALJ made the finding that Plaintiff's RFC would permit her to return to her past relevant work as a teller, a customer service representative, or a manager of a financial institution.

(Tr. at 16-17).  The ALJ posed a hypothetical question to the VE which included the limitations of Plaintiff's RFC.  (Tr. at 298).  The VE stated that, based on his experience, the hypothetical individual could perform the job of teller, as it is defined in the DOT.  (Tr. at 299).  The VE also testified that the hypothetical plaintiff could perform the jobs of customer service representative and manager of a financial institution, both as the Plaintiff performed those jobs and as they are defined in the DOT.  (Tr. at 299).  As previously mentioned, the ALJ is entitled to rely upon VE testimony along with the DOT to determine the demands of Plaintiff's past relevant work.  20 C.F.R. § 404.1560(b)(2).

The only case cited by Plaintiff, *Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1347 (M.D. Fla. 2004), is distinguishable from the facts of this case.  The plaintiff in *Bruet* had past relevant work as a hospital clerk, library clerk, and as a receptionist in a dental office. *Bruet*, 313 F. Supp. 2d at 1342.  At the fourth step of the sequential evaluation process and without any VE testimony, the ALJ found that the plaintiff could return to her past relevant work as a receptionist even though she worked as a receptionist part-time (12 hours per week) for two years.  *Id.* at 1346-47.  The reviewing district court found that the ALJ erred because the ALJ determined that the plaintiff could return to her previous work as a receptionist as generally performed in the national economy and not as she described it (*i.e.* part-time and for such a short duration).  Without further elaboration, the district court remanded the case so that the ALJ could "follow the correct procedure" laid out in SSR 82-62 and determine if the plaintiff in that case could, in fact, return to her job as a receptionist given her limited work experience.  *Id.* at 1347.

Unlike the ALJ in *Bruet*, the ALJ in the instant case made the necessary findings of fact concerning the mental and physical demands of Plaintiff's past relevant work

12

experience as a banking specialist (a job that encompasses the job areas of bank teller, customer service representative, and manager of a financial institution), which Plaintiff performed full-time for ten years.  The ALJ further developed the record by soliciting testimony from a vocational expert, who testified that Plaintiff could perform her past relevant work, both as she described it and as those jobs are defined in the DOT.

The Court finds that the ALJ was entitled to rely upon the testimony of Plaintiff and the VE in finding that Plaintiff retains the residual functional capacity to perform the physical and mental demands of her past relevant work.  Thus, the Court finds that the ALJ fully developed the record in accordance with SSR 82-62.

### 4. The Effect of Headaches on Plaintiff's RFC

Plaintiff's fourth and final argument is that the ALJ failed to adequately consider whether Plaintiff's headaches constituted a severe impairment or should have resulted in additional limitations not included in the ALJ's residual functional capacity assessment pursuant to SSR 85-28.  For the following reasons, the Court does not find Plaintiff's argument persuasive.

SSR 85-28 states: "An impairment or combination of impairments is found not severe and a finding of not disabled is made at this step [Step 2] when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (S.S.A. Nov. 30, 1984).  Under Eleventh Circuit case law, the severity of the impairment must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

13

Although, Dr. Vincenty recorded point tenderness at the suboccipital region on the right side of Plaintiff's head on October 14, 2003 (Tr. at 182), Plaintiff denied any nausea, vomiting or weakness and an MRI of Plaintiff's brain was described as unremarkable with no evidence of abnormalities. (Tr. at 157, 182). On April 8, 2004, Dr. Vincenty stated that Plaintiff "suffers from headaches secondary to migrainous features," but did not assign any limitations associated with this condition. (Tr. at 231-32).

A mere diagnosis of a medical condition, without any showing of how the condition limits the ability to perform the normal activities of work is insufficient to establish a severe impairment. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (noting that while the claimant undoubtedly had sickle cell anemia, she manifested few symptoms of the condition, her findings were normal or close to normal and occasional episodes of hospitalization were not conclusive); *see also Wind v. Barnhart*, No. 04-16371, 2005 WL 1317040 (11th Cir. June 2, 2005) (finding in a recent unpublished opinion that a diagnosis, standing alone, is simply insufficient to establish a severe impairment at step two of the sequential evaluation process and that the claimant must show the effect of the impairment on his or her ability to work) (*internal quotations and citations omitted*).

Even though the ALJ in the instant case did not find Plaintiff's headaches were a severe impairment, he did cite to Plaintiff's testimony regarding her headaches when evaluating her impairments and limitations. (Tr. at 15). Therefore, the Court finds that the ALJ considered the effect of Plaintiff's headaches when determining her RFC and her ability to perform her past relevant work. Moreover, the Court notes that none of Plaintiff's treating or examining physicians ever attributed any physical or mental limitations stemming from Plaintiff's complaints of headaches. It is not the actual medical conditions, but the

limitations that result therefrom, which are relevant to the Commissioner's evaluation of Plaintiff's RFC.  *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999) (holding that a VE's testimony that a claimant can perform a significant number of jobs in the economy despite her limitations constitutes substantial evidence in support of the Commissioner's decision).

After finding at least one severe impairment, the ALJ must continue with the remaining steps in the sequential evaluation process and, at that point, all of a plaintiff's impairments are considered in combination in determining a plaintiff's RFC.  20 C.F.R. § 404.1523; *see also Maziarz v. Sec. of HHS*, 837 F.2d 240, 244 (6th Cir. 1987) (finding the ALJ was allowed to consider plaintiff's cervical condition in combination with the other impairments the ALJ found "severe" when determining plaintiff's RFC even though the ALJ did not specifically find plaintiff's cervical condition to be a "severe" impairment).

Therefore, it is the opinion of this Court that substantial evidence supports the ALJ's decision not to specifically designate Plaintiff's headaches a "severe" impairment and that, by mentioning Plaintiff's headaches, the ALJ considered Plaintiff's headaches in combination with her other impairments when determining her RFC.

## V. Conclusion

Although the ALJ's decision may not have been as artfully worded as Plaintiff may have wished, a remand would not alter the ALJ's findings nor provide greater clarification. *See Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981) (remand is a "wasteful corrective exercise" when no further findings could be made that would alter the ALJ's decision given the record as a whole).  As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to

sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own fees and costs.

      **DONE AND ORDERED** at Jacksonville, Florida this  25th  day of September, 2007.

Copies to all counsel of record
      and *pro se* parties, if any

*/s/ Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge